Good morning, and may it please the Court. My name is Lisa Heeman, and I'm an Assistant Attorney General for the State of Arizona. I'm here today on behalf of my clients, Lauri Esslinger, Rebecca O'Tone, and Teresa Patterson. We're here today because Mr. Livingston argues that...  Yes, yes, of course. ...that his clients did not adequately investigate his date of birth and his age, and that they failed to disprove his date of birth as it appeared on his federally issued identification. Well, Counsel, the Lipscomb v. Simmons case will have a lot to do with this case. Yes, Your Honor, it will. What's your interpretation of it, and how does it apply here? Lipscomb v. Simmons would go to the... So our position is that there's two alleged violations here. The first is that there was a violation, Mr. Livingston alleges, that occurred when the dependency was prematurely closed, and I can come back to that later. Lipscomb would apply to his allegation that my clients did not provide him with age-appropriate restoration services. And the reason that it is relevant here for, really for Mr. Livingston or what he claims it's relevant for, is to establish or to demonstrate that that right would be clearly established. It is our position that my clients are entitled to qualified immunity because the right to age-appropriate restoration services is not a clearly established right. As you know, qualified immunity would protect government officials for their reasonable mistakes. Qualified immunity does not apply if a government official violates a right that is clearly established. Ma'am, could you talk, though, a bit, as was requested earlier, about the contours of the Lipscomb case and the limits of it, since it's obviously so important here? Absolutely. So the phrase that Mr. Livingston relies on from Lipscomb is that a child that's in state custody is entitled to minimally adequate care and treatment appropriate to the ages and circumstances of the children. The problem with his reliance on that phrase is it was not the holding in the case. The Lipscomb case was actually an equal protection case. It didn't have anything to do with the ages of children. It didn't talk about the adequacy of the care that the children received while they were in state custody. It didn't talk at all about restoration services or any of the other descriptions that Mr. Livingston has for what those restoration services are. For that reason, that phrase, although it has been quoted in other cases, was not actually the holding in Lipscomb, and so that reliance is misplaced. Now, it is Mr. Livingston's burden to show that that right is a clearly established right, and the State would not deny the fact that that phrase has showed up in several other cases. The problem here is that it has never been shown to be clearly established in the sense that it is the law would be, as the fact, excuse me, that the, in order to be clearly established, the law must be tailored to the facts of the specific case. And in this case what we're talking about is whether or not my clients adequately investigated Mr. Livingston's age and then provided him with these so-called restoration services, which are not, as an aside, ever really defined. Counsel, I hear you that you say that Lipscomb is dictum, and let's for the moment assume it's holding, because I'm just trying to understand what you think the limits of that phrase is. In other words, if that were the holding of the case, would that change things here? No, it really wouldn't. And, again, that's because in that case it did not the facts of that case were not in any way similar to the facts of this case. What's required of the state when there is a special relationship, as was the case here, that there was a relationship between Mr. Livingston and the state because he was in a custodial relationship. What the case law tells us is that the state is required to provide certain basic needs to a child. And those basic needs include things like food, shelter, clothing, medical care, reasonable safety. However, none of the case law has gone into whether or not or how that should be applied in terms of age or what restoration services would be. What do we do with the passage that the state must provide foster children, and I'll quote, minimally adequate care and treatment appropriate to the age and circumstances of the child, unquote? How do we apply that passage here? You would apply it in the same way that it has been applied in the other case law here on the Ninth Circuit. And the way that the case law has applied it is that these children in foster care are entitled to certain basic human needs. And, again, those human needs, what the cases have shown are food, shelter, clothing, et cetera. If this court today decides to include age appropriate care and age appropriate restoration services, then this will be the first court to hold that, and that's why my clients would be entitled to qualified immunity in this case. Hopefully that answers your question. With respect to the first alleged violation, of course, the alleged premature closing of the dependency, we, again, would point to the DeShaney case, which was obviously briefed in both of our briefs. The DeShaney case is squarely on point with this case, that the 14th Amendment does not make it a violation or is not a violation of the 14th Amendment to close a dependency prematurely. In DeShaney we saw social workers who mistakenly returned a child to his abusive father who then later abused the child so severely that he would require treatment for the rest of his life. Despite that fact, the Supreme Court did not find that those mistakes served as a basis for a 14th Amendment violation. For that reason, the 14th Amendment does not require that the state take children into its care. It does not require that the state keep children in its care for a certain period of time. And it does not tell social workers when they can release a child from its care. So if the organization that took the charge of this boy was overloaded with people, they just didn't have space, and even though they knew he was 15 or 14 or 16, they just let him go because there's just no room, that's not a violation of his rights? That would not be a violation of his 14th Amendment rights. If there was a problem with it, it would be solely limited to state law. But that's not the allegation in this case. The allegation is, of course, that his substantive due process rights were violated by closing the dependency early. And again, because in DeShaney we saw similar circumstances. DeShaney, you could liken to our case here. DeShaney, the social workers, made a mistake and they returned the child to his father, and there were obviously grave consequences from that. Again, despite that fact, the Supreme Court did not find that that was a 14th Amendment violation. Likewise here, even if we believe, and as we must because this is on a motion to dismiss, all of the allegations in plaintiff's complaint, if my clients made a mistake and prematurely closed that dependency, that would not serve as the basis for a substantive due process violation under the 14th Amendment. So it's your position that under no circumstances is there any obligation by CPS workers to take care in any way about the correct age of the people, of the children who are in their care? Not one that's clearly established, Your Honor. And again, that's because despite the fact that that phrase, again, we don't deny that that phrase has appeared, but that phrase was dictum in Lipscomb, and then it's been cited in a few other cases. But in all of those cases, they reference the duty to keep a child safe from, I mean, by and large, all of the other cases that use that phrase are cases in which a child was being abused in some way in foster care. That's not this case. This case is about whether or not the child, Mr. Livingston, was receiving something called restoration services. If this court finds that a child should be entitled to age-appropriate restoration services, then, of course, my clients would still be entitled to qualified immunity, but we would request some guidance as to what to do when there's conflicting evidence, as there was in this particular case, because, of course, again, we had Mr. Livingston's aunt in the federal identification that clearly noted that his date of birth was 1994. Going back to the clearly established issue, another thing that I did want to point out was the fact that the Ninth Circuit says that in order for it to be a clearly established right, the law must be such that every reasonable official must understand that what he or she is doing violates that right. Again, my clients would not have had an understanding that relying on Mr. Livingston's aunt or relying on his federal identification would have violated his substantive due process rights. Indeed, not only my clients didn't know that, but as we know from the third amended complaint, neither did law enforcement officials from the City of Phoenix and one of the other cities in the Phoenix metro area, and neither did the Arizona State Superior Court, who also used the federal identification to establish his date of birth. So for that reason, Your Honors, we would request that this Court reverse the district court's decision on the motion to dismiss and enter a judgment in favor of my clients. I will take unless the Court has questions. Kennedy. So your position is not so much on the first prong as to whether the constitutional right was violated, but your position is it wasn't clearly established. Well, two prongs, I guess. To the extent that Mr. Livingston claims that closing the dependency early was a violation, our position is that simply isn't a violation of the Fourteenth Amendment and that De Cheney controls. Then with respect to whether the violation because there wasn't deliberate indifference to his age, or what's your position on that? No.  The violation of the Fourteenth Amendment to close a dependency, that's what we saw in the De Cheney case where, again, in that case the social workers closed a dependency early, and yet the Supreme Court did not find that that was a violation of the Fourteenth Amendment. The Supreme Court goes on to note that the Fourteenth Amendment does not transform every state law tort into a constitutional violation. So if there was something wrong with the fact that my clients closed Mr. Livingston's dependency, whatever it was, it wasn't a Fourteenth Amendment violation. And then to your second point, Your Honor, the allegation that my clients did not provide Mr. Livingston with age-appropriate rehabilitation services, we would argue that if that is a right, it is not a clearly established right. Okay, I got you. Thank you, Your Honors. Thank you, Your Honor. And may it please the Court, my name is Keith Knowlton. I represent the plaintiff and the appellee in this case, Caselli Livingston. This case is about age-appropriate services. That was established in Lipscomb case back in 1996. In the Tomas case in 2010, the Court came out and were talking about the right a child has in state custody when they take the child into state custody. And it spelled out that that right is minimally adequate care and treatment appropriate to the age and circumstances of the child. And they found that that right was well established back in 1996 in the Tomas case. Well, as a matter of generality, maybe, but address the facts in this case. The social workers had two pieces of information. One, the advice of the aunt, which was never changed. And number two, the federal I.D., which had the same date of birth. Correct, Your Honor. And they had the federal I.D. when he went into custody, which indicated he was two years older. He's saying all the way along, no, that's not correct. So the second they take him into custody, he's telling him that. Further, how do I want to say this? The defendant's document. May I suggest you're dodging the question? Sure. The two pieces of adult information, let's say, were that he was older. And why shouldn't the social workers or the department rely on the physical evidence of the I.D. as well as the oral testimony of the aunt? Because they had significant evidence and information given to them that they documented themselves and wrote that they knew about, indicating that he was two years younger, from being diminutive in size, from being a second-grade level. You have a psychiatrist saying his age has to be investigated because it's not right. You had an investigator from the court make the same indications. The court found, with all that information or information they had at their disposal, what his age was before they aged him out of DCS care in custody. So there was a whole series of facts that the court relied upon. These people had information and didn't take any action to determine his age. And as the State or as defendants want to argue, they don't have an obligation. Well, didn't they consult the aunt? Didn't they consult the aunt? Your Honor, my client was in care and custody because of abuse allegations against the aunt. That's why he was there. I don't know what, at least in our complaint, what information the aunt provided them. In the complaint, what we've laid out is they had the federal ID that was obtained from the aunt when they came into the United States from Liberia. So I don't know, I don't have any evidence. The court didn't look at and we didn't have any facts in the complaint dealing with what the aunt told the defendants. Mr. Knowlton, some of the things you've referred to about the psychiatrist, et cetera, wasn't that just an observation? I mean, it wasn't what they had when he came in, which was a United States document that had his age. I guess that's the first part of my question, if you would respond to that. And secondly, the scope of the obligation that would be imposed on these workers. As I read the complaint, his age, his correct age was eventually determined by dental forensic analysis. So talk a bit, if you would, about the scope of the obligation that you are imposing on these defendants. The scope of the obligation is simple, age-appropriate services, age-appropriate care. I mean in terms of determining age, sir. He was originally came into juvenile court supervision for criminal matters before he went into care and custody. And he was evaluated and found to be incompetent to stand trial. Because of where he was at, his, you know, he was incompetent. And so the evaluators by the court and the psychologists were the ones involved in that. And they're all commenting, hey, this guy is too young. He is not the age that's on the federal records. So that's the starting point. Then the abuse allegations occur with the mom. He ends up in the, for about a year, he ends up in the juvenile court, I mean, DCS care and custody. Well, from the very beginning, they're getting the information that he's under, that age is not correct from very good sources. Plus the physical evidence that they had in front of him. And they documented it. They knew that. But they decided, well, he may be 15, but we're going to age him out. It's not like the court. And to Shaney, if you go look at that one, the court ordered him, the child back to the father. DCS had no choice but to give the child back to the father who assaulted the child. In this case, aging out is 18. You just age out. And so knowing that, the case workers allowed him to age out. Then he gets arrested, spends time in Maricopa County Fourth Avenue Jail as a minor, but he's in adult jail. And he pleads guilty to get out. Then ICE takes him because now he's got a felony. Well, they actually listen to him. They listen to him. The feds do. So they do the forensics, the dental, to determine his act age. Then they say, hey, we can't do anything. They send him back. And ultimately it was the immigration lawyers and some court-appointed criminal lawyers who were able to get all that correct because he was a minor. No, I understand all that. I read the record. My question to you is, are you imposing on the CPS workers, as a child comes in with a residency card telling what his age is from the United States, the obligation to do a dental forensic analysis to make sure that that is the age he is? My argument is that if you have reasonable information, birth certificates or something like that, federal, yes, you can rely upon it in determining the care you're going to provide to the child. That's age-appropriate care. But if you have information, credible and reliable information, that that's not accurate. This is providing schooling. This is providing services to a child to help them develop. We can't walk away from that. As the Court said, they cannot show a blind eye to that because they need to provide, as the standard says, age-appropriate care. But it seems to me you're asking us to take a blind eye to the federal ID and the information provided by his aunt. Your Honor, what we're talking about isn't the standard and whether it's clearly established. What we're talking about is deliberate indifference, which is knowing the risk and not doing anything about it. And that's what the Court found. Let me just read to you what the judge said. The necessity of ascertaining a child's age in order to meet the duty of providing age-appropriate care therefore seems clearly enough that a reasonable caseworker would have known that turning a blind eye to the evidence that a child was younger than his recorded age likely would result in age-inappropriate care and treatment. We're talking about in that year that care and treatment. What are you going to provide to the child? If you've got information as a CPS caseworker that that is not correct, you should take action. This is the state of Arizona. They have the ability to do everything that the feds did and do it quickly. When he was being arrested, we do this all the time in juvenile court, get experts to come in and look at issues and find out and determine it. But in this particular case, they knew this. They documented it but decided, you know what, we don't want to deal with this issue. We're going to age him out. So they took a 15-year-old and took him out of the system. And you say that's enough to establish deliberate indifference? We're dealing with a qualified immunity claim here. Yes, I think that's enough to establish deliberate indifference because it has the knowledge, they knew about it, credible evidence, and they did nothing when they decided to age him out. See, that's not a court order kicking him out. They said, okay, we're going to leave him 18. Is there any evidence in the record that they knew with a certainty that his age was two years different? Your Honor, they knew that he was diminutive in size. They knew that he was in second grade level when he came in, which he would have been, in their mind, about 17 when he came in. He's in second grade level. They knew that his instructors, they put him in education, had told him that, hey, that's not the right age for him. That needs to be fixed. Okay? And they document this. Not us. They put it in the reports. They document this in the decision-making, their case notes, what they're going to do. Then you add on to that the stuff, and the complainant argues they knew, from the evaluator from the juvenile court and the psychiatrist from the juvenile court. Is that absolute knowledge? No, but it's absolute that there's a problem. It's absolute that I should look into it. May I ask you a question, Mr. Knowlton? Deliberate indifference has as an element the subjective knowledge of a risk, right, and then indifference to that risk. What risk was there in turning him loose? Your Honor, that he cannot function. Isn't he being given liberty? Isn't that what he's being given? Your Honor, they're sending him back to the home where he was abused from. That's number one. But number two — But the risk is that he might be abused, but he wasn't abused. He committed a crime. Your Honor — Is your position that there is a subjective knowledge that this individual will commit a crime? Your Honor, he had a history of that. So that's your position? Well, no. I'm just answering that one particular point. He had a history of that. Our case isn't about him being — having a right or not having a right to remain in juvenile court custody. That's not our allegation. We didn't — if you read our complaint, that's not in there. They cite a paragraph saying that we say that's the talisman of our case. It's not. It has nothing to do with our case. Our case is when he was in their care, and they have the information, and you're providing education and you're providing other services. They have a duty and obligation to ensure — So there might be a risk that he doesn't learn how to read. There might be a risk that he might be abused when he goes home. But are you seriously considering that there's a subjective knowledge that if we turn him loose, he will commit a crime? No, I don't — will. He had in the past, and they knew who the kids were he was around. They knew he didn't understand, what, the legal system. Something's going to happen to that kid. That is not a good situation. Now, I can't say we can argue about that. Something that's going to happen is not subjective knowledge of a precise risk, is it? Your Honor, let's go back. What is the risk? It isn't that we're going to put an 18 — a 15-year-old kid out in the street, okay? The risk is that we're not providing age-appropriate services or care to a child currently in our care system. No, no, but what is the risk that the failure to provide care entails? What is the risk to which you're exposing him by not providing care? That's a subjective risk which needs to be known. And what you're arguing is the risk that he'll commit a crime. No, I'm just saying that's part of it. So he should be kept in custody so that he won't commit a crime. He's in custody. He's under the care and treatment of a case manager. He's in a home where they're watching him 24 hours a day. He goes to school. But the commit a crime aspect, I only say that because of his prior history. You can't ignore his prior history, the rest that he had, the fact that he was incompetent to stand trial. What's the risk? That he will never be competent. What's the risk? That he could harm society. What's the risk? That he is not going to be a productive member of this society and cannot be a productive member of this society because they've put him in grades that are too high for him. They put him with adult kid boys who are influencing him. You know, so those are the – they had an obligation. I think it's clear that the constitutional right, they had an obligation to provide age-appropriate care.  Kagan. Kagan. I'm going to ask about, if you would, what Ms. Heyman spent most of her time on, which is that even if there is such a right, which she disputes, it was not clearly established. Is Lipscomb what you believe makes it clearly established, or is there some other case or cases that you want to refer us to? Your Honor, if you look at the Tomas case, it specifically says it's clearly this right. You have him in state custody. So now we have a duty and obligation. That's the general. And they say, what is the duty and obligation to provide adequate care? It is age-appropriate adequate care. And the Tomas case says that was well established. That was well established back in 1996. But that's a very generalized statement, is it not? So how do you take that statement and say it's a clearly established right that these CPS workers should have known? Your Honor, I'll refer you to the White case and the Casella case where they talk about they're attacking the excessive force under the Fourth Amendment rules as being too general. And they talk about that a general rule, assuming you say that this rule is general, I say it's specific because it gives them knowledge they need to provide age-appropriate services, and ours is right on all fours. But say it's not. Say it's a general one. Those cases are pretty clear that a general one can still be sufficient if it gives guidance, gives them knowledge that by their actions they'd be violating the Fourth Amendment. If you do not, I mean, I can't even see the argument as good faith. You don't have to provide age-appropriate services to a child in CPS care and custody. I think that is pretty much common sense. Kagan. How much do you have to do to figure out the age when he comes in with a residency card with an age on it? Nothing without other significant evidence that requires you then to do so. Okay. And I think that's pretty clear. But the other side, I'm going to go back to the White and Harris cases for a second because I've got just a few seconds left, is that they talk about if you're, you know, excessive force, reasonable force necessary under the circumstances. They said there's a lot of cases where that's too general and we can't deal with that. But they said if it's obvious, if the violation is obvious, then it's sufficient. This is obvious. You're not providing. You had information. You should have acted on it. The duty required you to act on it. I'm going to finish with one last thing. This case is not about actually determination, I mean, about right to remain in State custody. It's not our issue. It's not our allegation. If you go back and look at the complaint, we didn't allege that. So you could rule one way or the other on that. I don't think it's relevant to our case, because ours is about whether in State custody you have a duty and obligation to provide age-appropriate services. And the rest of it you don't. By keeping him in custody. In custody. Now, the Cheney tells us that's not right. The Cheney says if you're out of custody, then the obligation ends. Our obligation, we're suing him for what occurred in custody, Your Honor. Thank you very much for your time. Thank you, Your Honor. Do you wish to use your rebuttal time? I just have a few points that I'd like to clarify. The District Court, when it denied our motion to dismiss unqualified immunity, as to my clients here, noted that the failure was in closing the dependency. And that's why we addressed it in our brief. And that's why we are pointing out that DeCheney is on all fours. And I do want to clarify one point that was just made, which is that it is true that the court in DeCheney did order that the child be released back to the parent. But that was based on the recommendation of the social workers in that case. And so the same analysis applies there as would apply here in this case. The next thing that I wanted to clarify is that the 14th Amendment, as Your Honors know, was intended as a check against governmental abuse of authority. There's really only two exceptions to that case, and that is the special relationship exception, which we had discussed a little bit earlier, and the state-created danger exception. Neither of those exceptions would apply here to show that this right to age-appropriate services was clearly established. The Thomas case, although it was one of the cases that did, quote, the lipscomb phrase, minimally adequate care and services appropriate to the age and circumstances of the child. The Thomas case, again, was a case about a group of girls who were being abused, sexually and physically abused, by their foster parent. It had nothing to do with what age they were or how to determine what their age should be or what types of services they should receive in foster care. For that reason, that cannot serve as a basis to demonstrate that that right is a clearly established right, and that's why my clients are still entitled to qualified immunity. With that, unless the Court has any additional questions, I will waive the rest of my time. Thank you very much. The Court thanks counsel for their argument, and the case of Livingston v. Esslinger is submitted for determination. We'll pass on to the next case.
judges: O'scannlain, Bea, McLaughlin